543 A.2d 603

Crown, Cork and Seal Corporation, Petitioner *v.* Workmen's Compensation Appeal Board (Savini), Respondents.

Carlo Savini, Deceased, Mary Savini, Widow, Petitioner *v.* Workmen's Compensation Appeal Board (Crown, Cork & Seal and Insurance Company of North America), Respondents.

Argued February 22, 1988, before Judges MACPHAIL and COLINS, and Senior Judge NARICK, sitting as a panel of three.

*Thomas C. Lowry, Swartz, Campbell & Detweiler,* for petitioner, Crown, Cork & Seal Corporation.

*John J. Duffy, III,* with him, *Donald J.P. Sweeney, Bernard E. Kueny, III, Sweeney, Sheehan & Spencer,* for respondent, Savini.

OPINION BY SENIOR JUDGE NARICK, June 23, 1988:

Crown, Cork and Seal, Inc. (Employer) initiated this workmen's compensation proceeding by filing a termination petition on June 28, 1978, alleging that the work-related injury Carlo Savini (Claimant) had sustained on January 11, 1978 had terminated as of June 9, 1978, the date he was examined by Employer's physician. During the pendency of that proceeding, Claimant suffered a fatal heart attack. His widow filed a fatal claim petition alleging that the work-related injury was a substantial contributing factor to his death. Both petitions were consolidated for hearings before a workers' compensation referee, who issued separate decisions denying the termination petition (March 26, 1982) and granting the fatal claim petition (March 30, 1982).

Employer filed a timely appeal of the denial of its termination petition. Because its attorney had not received notice of the award on the fatal claim petition, which had been mailed to the wrong address, it sought and was ultimately granted permission to file a *nunc pro tunc* appeal.

On appeal to the Workmen's Compensation Appeal Board (Board), it was discovered that the transcript from one of the referee's hearings was missing. The Board remanded on June 3, 1983, directing that the missing testimony be transcribed, or, if unavailable, be recreated. Because the transcript was not available and the reporter could apparently not be located, the parties redeposed the witnesses, Claimant's physician, Dr. Faires, Employer's physician, Dr. Blaker, and Claimant's daughter, Jennie Savini. The referee forwarded the recreated testimony to the Board, which, on March 12, 1987, allowed the *nunc pro tunc* appeal and affirmed both decisions.

Cross appeals are before us presently for disposition. Employer has appealed, alleging various procedural and substantive errors. Claimant's[1] cross appeal seeks to have Employer's appeal dismissed for failure to appeal from the Board's remand order and disputes the propriety of the Board's allowance of Employer's *nunc pro tunc* appeal. We shall first address the latter two issues.

Claimant contends that, because the Board's remand order was for the limited purpose of recreating lost testimony, Employer was obligated to appeal from that order if it wished to have additional testimony considered. (Employer's assertions on this point are considered below). This argument ignores the long-standing rule

---

[1] For the sake of convenience, we shall refer to Claimant and his widow interchangeably as "Claimant."

that remand orders are interlocutory in nature and unappealable as a matter of right. *See Murhon v. Workmen's Compensation Appeal Board,* 51 Pa. Commonwealth Ct. 214, 414 A.2d 161 (1980). This Court recently considered and rejected a similar argument in *Budd Trailer Company v. Workmen's Compensation Appeal Board (Behney),* 105 Pa. Commonwealth Ct. 258, 524 A.2d 525 (1987), reaffirming the *Murhon* rule, and we shall do so here.

Claimant's second allegation of error is that the Board improperly allowed Employer's *nunc pro tunc* appeal of the referee's award on the fatal claim petition because, while it is undisputed that the notice of the referee's decision was addressed to Employer's attorney's former address, correctly addressed copies were mailed to Employer and its insurance carrier. Employer, in its petition for allowance of appeal *nunc pro tunc,* avers that neither its counsel nor its insurance carrier received notice of the decision. The Board noted that the insurance carrier's address was correctly listed on the cover page of the award, but nonetheless granted the petition, apparently believing that the administrative mistake in mailing a copy of the decision to Employer's counsel at the wrong address required it to allow the appeal. We disagree.

We have long held that the twenty-day time limit for taking an appeal[2] is to be strictly observed, and that the time for such an appeal cannot be enlarged in the absence of fraud, deception, coercion or duress. *Riley Stoker Corporation v. Workmen's Compensation Appeal Board,* 9 Pa. Commonwealth Ct. 533, 308 A.2d 205 (1973). Mere hardship is insufficient. *Id.* Here, there is simply no allegation that the Petitioner, Employer itself,

---

[2] *See* Section 423 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §853.

did not receive notice of the decision. The Act provides that "all parties in interest" shall be served with a copy of any awards[3] and that copies properly stamped and addressed shall be deemed served on the date mailed, and presumed to have reached the party to be served.[4] Although that section allows a party to show "by competent evidence" that notice was not received, there is no indication that either Employer or its insurance carrier elected to adduce such evidence before the Board, which noted that the carrier's address was correct on the form. Accordingly, the statutory presumption that notice was received must govern with respect to the insurance carrier.

The Board did note, however, that it was obvious that notice to Employer's counsel was mailed to the wrong address. However, because the statute specifically requires that notice be given to "all parties in interest," we believe the Board erred in allowing the appeal *nunc pro tunc* on these grounds.[5] We have previously rejected similar arguments where 1) an appellant's counsel did not receive notice, *Iannotta v. Philadelphia Transportation Company,* 11 Pa. Commonwealth Ct. 156, 312 A.2d 475 (1973); *Rouse Appeal,* 48 Pa. Commonwealth Ct. 588, 410 A.2d 919 (1980); 2) counsel withdrew from the case, *Workmen's Compensation Appeal Board (Westinghouse Electric Company) v. Gaines,* 24 Pa. Commonwealth Ct. 307, 355 A.2d 595 (1976); or 3) a claimant was apparently not represented by counsel

---

[3] Section 405, 77 P.S. §716.

[4] Section 406, 77 P.S. §717.

[5] Of course, we wholeheartedly condone the administrative practice of serving notice on counsel and note that Section 31.26 of the Pennsylvania Rules of Administrative Procedure, 1 Pa. Code §31.26, provides for such service. Nonetheless, the specific *statutory* provision here provides simply for notice to all parties in interest.

during the 20-day appeal period, *Fritz v. Workmen's Compensation Appeal Board (Kim Manufacturing Company, Inc.),* 107 Pa. Commonwealth Ct. 168, 527 A.2d 636 (1987); *Riley Stoker.* In all of these cases, the obvious hardship to the appellant was insufficient to justify a *nunc pro tunc* appeal. The same reasoning must apply here, where the hardship arose as a result of a failure to communicate between the Employer and its counsel and was not attributable to administrative negligence, fraud, coercion or duress, so as to allow this appeal. Accordingly, the Board improperly addressed the merits of Employer's appeal from the fatal claim award.

At this juncture, we shall address the issues raised by Employer in its appeal from the denial of its termination petition, being mindful that our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law committed, or whether necessary findings of fact are supported by substantial competent evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

Claimant was an ink-mixer who was injured on January 11, 1978 when his leg was caught in machinery he was using, resulting in a fracture of his right knee. He was paid benefits pursuant to a notice of compensation payable from January 12, 1978 until June 8, 1978. As of June 9, 1978, Employer obtained an automatic supersedeas by filing a physician's affidavit of recovery along with its termination petition.

Following several hearings, a referee entered an order denying the termination petition in which he accepted and expressly relied upon the testimony of Claimant's physician, Dr. Faires. Following the Board-ordered remand to complete the record, the Board affirmed this decision.

Employer's first allegation of error is that the Board erred in failing to require the referee to review the tes-

timony recreated on remand. Employer contends that because it was more successful in eliciting concessions from the Claimant's doctor during cross-examination, the referee should have been required to reexamine his factual findings in light of this "new" evidence. These concessions, it is argued, do not support the referee's findings.

First of all, we note that Employer has failed to cite any authority for this proposition. The Board determined that the referee, in forwarding the missing testimony to it, had complied with the intent of its remand order. We must agree.

The purpose of the Board's remand was to complete the record by supplying missing testimony. Of course, the Board was required to remand when faced with an incomplete record for review. *See Workmen's Compensation Appeal Board v. United Parcel Service,* 21 Pa. Commonwealth Ct. 502, 346 A.2d 852 (1975). The Board did not, however, remand for new or additional findings by the referee. Had the referee made such findings, he would have exceeded the scope of the remand order, which we have specifically disapproved in the past. *See, e.g., Glabern Corp. v. Workmen's Compensation Appeal Board (Moccia),* 84 Pa. Commonwealth Ct. 381, 479 A.2d 77 (1984).

Employer's second argument is that the referee's findings of fact are not supported by substantial evidence because of Dr. Faires' "concessions" on cross-examination. As we have stated innumerable times in the past, the referee is the ultimate fact-finder, and he is entitled to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *LoRubbio v. Workmen's Compensation Appeal Board,* 49 Pa. Commonwealth Ct. 529, 411 A.2d 866 (1980), *citing American Refrigerator Equipment Company v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977). Where the

referee's findings are based upon substantial competent evidence in the record, we are without power to disturb them. *LoRubbio.*

Here, the referee made the following findings based upon Dr. Faires' testimony:

5. . . . He [Dr. Faires] had treated Claimant since 1972. Claimant had had a prior myocardial infarction in 1967 and was able to return to his regular work thereafter. From 1972 to January 1979 Claimant was steadily employed; except for periods of hospitalization.

Following the January 11, 1978 injury Claimant again came under Dr. Faires['] care on March 15, 1978 and was hospitalized by the doctor's associate on that day. At that time it was considered that Claimant had a well known severe coronary disease and a two vessel by-pass, a gout control, cardiac cir[r]hosis, chronic congestive failure which had been well controlled even when he was working until January 11, 1978 when he sustained a right knee fracture, and with the stress of the injury and the additional stress of trying to cope with the disability of the injured knee he lapsed into chronic (heart) failure.

He found that Claimant had never recovered his health (from the January 11, 1978 injury) to the extent that it existed prior to January 11, 1978.

In his opinion as to the causal relationship the witness believed that the last episode of heart failure (March 15, 1978) was precipitated by the stress both physical and mental followed by exacerbation at work and subsequent additional physical stress caused by the injured right leg and the continued stress had started

Claimant's downward course; and it just continued downward to deterioration.

The doctor believed unequivocally that Claimant's condition and inability to return to work were causally related to the January 11, 1978 work related injury.

6. The Referee has considered all the evidence submitted by both sides in this case and has accepted the evidence of Claimant's physician Dr. Faires, which he finds to be sufficient, competent and credible over that of the Defendant's medical witnesses.

7. The Referee finds that Claimant had had a pre-existing cardio vascular condition which was aggravated and exacerbated by the January 11, 1978 injury and fracture of his right knee and following same became worsened by the stress physical and mental that he experienced from the continuing pain and discomfort from said injury. As a result of this Claimant was totally incapacitated from returning to work from the date of the injury to his death that occurred on March 26, 1979.

We have thoroughly reviewed the doctor's testimony and find ample support for these findings, notwithstanding any possible contradictions contained in the doctor's cross-examination testimony.[6] It is the referee, and not

---

[6] Employer points to two contradictions which it believes must control. First, it claims that because Dr. Faires recognized that Claimant engaged in very little physical activity prior to the March 1978 heart failure, the knee injury could not have been a contributing factor. This is an absurd characterization of the doctor's testimony in light of the fact that he opined that Claimant was in congestive heart failure for approximately one month before his hospitalization, and that the failure was precipitated by the injury, the stress of which was both a causative factor and the *reason* for Claimant's sedentary existence. Secondly, Employer argues that because the doctor conceded on cross-examination that Claimant's condition was

this Court, who is charged with the responsibility of resolving the conflicts in the evidence, even those arising from the inconsistent testimony of one witness. *American Refrigerator*. Because Dr. Faires' testimony constitutes substantial evidence in support of the referee's findings, we will not disturb those findings on appeal.

In summary, we shall affirm the order of the Board, notwithstanding the fact that it affirmed the referee's decision on the fatal claim petition on the merits, having erroneously granted permission to appeal *nunc pro tunc*.[7]

## ORDER

AND NOW, this 23rd day of June, 1988, the order of the Workmen's Compensation Appeal Board relating to the above-captioned matters is hereby affirmed.

---

improved after his March 1978 hospitalization, it necessarily followed that the injury was no longer a factor in his disability. Suffice it to say that improvement and recovery are not synonymous, and that Dr. Faires testified that the Claimant never regained his health following the January 11 injury to the point where he was able to work again.

[7] We may, of course, affirm on other grounds where grounds for affirmance exist. *See, e.g., Fritz*.